KWOCK TOU WONG HUNG *v.* WONG HUNG.

No. 1479.

APPEAL FROM CIRCUIT JUDGE FOURTH CIRCUIT.
HON. H. L. ROSS, JUDGE.

ARGUED JUNE 27, 1923.　　　　　　　DECIDED JULY 23, 1923.

PETERS, C. J., PERRY AND LINDSAY, JJ.

DIVORCE—*extreme cruelty.*

> On a libel for divorce upon the ground of extreme cruelty the
> trial judge having found that the conduct of the libellee did not
> constitute extreme cruelty, it was error to grant a divorce.

OPINION OF THE COURT BY LINDSAY, J.

This is an appeal from a decree of divorce granted by
the circuit judge of the fourth circuit. Libellant in her
libel prayed for a divorce on the ground of extreme cru-
elty, alleging that libellee had, during the past three
years, and more particularly during the past year, carried
on a course of cruel and inhuman treatment toward libel-
lant and had treated her in a cruel and inhuman manner;
that during said time libellee had shown a quarrelsome
attitude toward libellant and had displayed an ungovern-
able temper toward her and threatened her repeatedly
with bodily injury; that on one occasion, to wit, the 6th
day of December, 1922, libellee in a public place struck
libellant in the face, for which assault libellee was ar-
rested, pleaded guilty, and was fined $25; that libellee
took some money belonging to libellant and did not return
the same to her; that libellee on frequent occasions called
libellant vile, vulgar and indecent names, and has sub-
jected libellant to humiliation in public places; that said
treatment of libellant by libellee has caused libellant to
suffer great and grievous mental and physical pain and

anguish and has rendered her sick and in ill health as a result thereof, and said treatment of libellant is such as to render it unsafe for libellant to live with libellee; and that by reason of the quarrelsome disposition and ungovernable temper of libellee toward libellant, she is in constant fear of the libellee and has been compelled to live separate and apart from him, believing that if she were alone with him her life and person would be endangered by the presence of libellee.

In support of the allegations of her libel, the libellant testified that on December 6, 1922, while she was in a store making some purchases, libellee came in "and told me to go home.  I told him to go home first and I would be right after him, and he beat me in the store * * * he slapped me on the face;" that this slapping hurt libellant for a week.  Libellant had libellee arrested for this assault, to which charge he pleaded guilty in the district court and was fined.

Libellant further testified that during the last three years and particularly the last year "he" (libellee) "always licked me and go out gambling;" that on one occasion libellee took from libellant's trunk $39 belonging to libellant and, on being asked why he did so, replied that he had to pay a bill.  Libellee promised to repay this money to libellant but had never done so; that libellee once called libellant a half-white pig, also "he practically called me a whore.  He called me a stinkfoot. * * * He says I always run around * * *.  He said I always go around the street looking for men * * *.  In November he beat me in the room while I was asleep."

On the day after libellee was fined for assaulting libellant, libellant with her mother went to the house of libellee where they saw a hatchet on the table of the bedroom.  This hatchet was usually kept in the kitchen. Sometime in 1920 libellee brought an iron bar into the

house stating that if certain Chinese friends of libellant came again to the house he would hit them with this bar. Asked if libellee ever threatened her with bodily injury, she replied, "He always does. * * * He says he will take my eyes out and flang my nose." On being asked, "As a result of his calling you those names and as a result of his threatening you and beating you up, what is your condition at this time?" libellant answered, "I have always been feeling sore over the body and have always been frightened. * * * I am afraid of him beating me up. * * * If he comes home and I speak gently to him he tells me to get away." . The foregoing is all of the material evidence given on behalf of libellant. Libellee took the stand on his own behalf and gave his version of the assault of December 6. He also testified that during all of their married life he had never before struck libellant. After argument the court took the matter under advisement and the next morning gave the following oral decision:

"In this case the only particular act of cruelty established by the evidence was the single slapping.of the libellant by the libellee at the store of Kwong Ick Loy, and that fact alone, under the decisions in Hawaii, is not sufficient on which to grant a divorce. But there is another element in connection with that which I think is controlling in this case, and that is the question as to whether or not the libellant has reasonable apprehension to believe in the future there may be recurrences of a like or similar nature. Without going into the entire testimony the evidence convinces the court that the libellee is extremely jealous of his wife, and particularly of her relations with the man, Chang Hwan, or something like that; and the libellant was asked on cross examination a number of questions as to her relations with this particular man, and she said that he was never at home but twice, and on both these occasions it was in connection with the burying of her first husband's bones, or sending them to China,

denying that her husband said anything to her about forbidding this particular man to her home; while her husband testified on many occasions this particular man visited his home during his absence, but how he knew this the evidence does not disclose. In considering Chinese traits of character, particularly the relation between the Chinese and half-castes, I do not know whether you saw the picture at the Empire Theatre recently, called 'Shame;' a picture developing the exact situation shown in this case. . . .

"In this particular case the libellee called his wife a 'halfwhite pig;' and the relationship between them is such I am fearful if I do not grant a divorce in this case that something serious may happen in the family. That is the way I interpret it from the testimony. The libellant was not severely injured by this slap, altho she testified to ailing for a week. I do not believe any particular injury was suffered by her on account of the blow, but think from the evidence that the court is not justified in interpreting it in any other way but that she has reasonable grounds to apprehend a recurrence of like acts in the future, and feeling so, the libellant is granted a divorce, and the decree will be signed upon presentation."

The one ground upon which a divorce was prayed for was that of extreme cruelty. In order then to grant the relief prayed for it was necessary that the trial judge should find from the evidence that the allegations of the libel had been proven and that the libellee's conduct toward libellant, as a matter of law, constituted extreme cruelty. The trial judge in his decision said: "In this case the only particular act of cruelty established by the evidence was the single slapping of the libellant by the libellee at the store of Kwong Ick Loy, and that fact alone, under the decisions in Hawaii, is not sufficient on which to grant a divorce * * *. The libellant was not severely injured by this slap, although she testified to ailing for a week. I do not believe any particular injury was suffered by her on account of the blow." It is to be

noted that mere cruelty is not a ground for divorce in this Territory, the statute requiring "extreme cruelty," yet the circuit judge in his decision speaks but once of "cruelty" and makes no reference whatsoever to the existence or nonexistence of the statutory requirement of extreme cruelty as revealed by the evidence adduced. Had the trial judge found from the evidence that as a matter of law the conduct of libellee toward libellant amounted to extreme cruelty, and granted a divorce, we are not prepared to say that we could have interfered with such decision. Such, however, is not the situation with which we are confronted. As was said by this court in *de Coito* v. *de Coito*, 21 Haw. 339, 342, "in cases depending wholly or largely upon the credibility of witnesses and the weight of testimony much weight is accorded to the findings of the trial judge who saw the witnesses and heard them testify." In the present case the trial judge heard the testimony of the libellant concerning the alleged extreme cruelty and evidently did not believe her narrative of acts of cruelty practiced upon her by libellee except as to the one assault of December 6. On the other hand, the trial judge evidently did believe libellee when he testified to having struck libellant on but that one occasion. The testimony of libellant as to alleged acts of cruelty other than the specific assault of December 6 was properly given little weight by the trial judge for it consisted chiefly of general and sweeping statements of alleged acts of cruelty, the acts mentioned not being elaborated on or brought out in detail. There remained then no sufficient evidence tending to prove extreme cruelty other than that relating to the isolated case of assault which was admitted by libellee, and we agree with the trial judge that that alone was not a sufficient showing of extreme cruelty upon which a divorce might be granted. The trial judge having expressly found, and that finding being amply

supported by the evidence, that the grounds upon which the divorce was prayed for had not been established, it is difficult to conceive upon what theory he proceeded to grant the divorce. Having found that the grounds relied upon for a divorce were absent and ,that the libellee had not been guilty of extreme cruelty toward libellant, the trial judge, apparently on .the theory that the parties would be better off if divorced, proceeded to hold that libellant had "reasonable grounds to apprehend a recurrence of like acts in the future" and granted libellant a divorce. In other words, the circuit judge has found that the allegations of the libel have not been proven, nevertheless, for other reasons, he grants the relief prayed for. Inasmuch as the circuit judge had found that the acts complained of did not constitute extreme cruelty, whether or not libellant had reasonable ground to apprehend a recurrence of like acts was immaterial, and the circuit judge therefore erred in decreeing a divorce.

The decree appealed from is reversed and the case remanded to the circuit judge with directions to dismiss the libel.

*C. S. Davis* (*S. L. Desha, Jr.,* and *Brown, Cristy & Davis* on the brief) for libellant.

*C. S. Carlsmith.* (also on the briefs) for libellee.